# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| SPECIALIST JEREMY HALL, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     **Case No. 08-2098-JWL-DJW** |
| | ) |
| MAJOR FREDDY J. WELBORN, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      ALL PLAINTIFFS LACK STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.     Because Plaintiffs cannot demonstrate that any injury allegedly caused by Major Welborn is likely to recur in the future, they lack standing to sue for prospective injunctive relief against him. . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.     Because Secretary Gates already exercises his authority to prevent constitutional violations through the Army's existing Equal Opportunity Program — which Specialist Hall failed to invoke — there is no live controversy with respect to Plaintiffs' request for injunctive relief against him. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            1.     The Secretary of Defense has directed the Army to develop policies and procedures consistent with the Department of Defense's prohibition of religious discrimination. . . . . . . . . . . . . . . . . . . 11

            2.     The Army's Equal Opportunity Program is a comprehensive system that protects servicemembers' constitutional rights. . . . . . . . . . . 11

            3.     Because Secretary Gates already "exercises his authority" to prevent constitutional violations through the Army's Equal Opportunity Program, an injunction against him would, in effect, be advisory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.     Plaintiffs lack standing to challenge the purported "pattern and practice" of impermissible support of religion within the Department of Defense because they fail to establish that Specialist Hall — or anyone else — has been personally injured by those alleged practices. . . . . . . . . . . . . . . . . . . 15

II.      PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE. . . . . . . . . . . . . . . . . . . . . . . . . 18

    A.     Specialist Hall's claims are barred under the <u>Mindes</u> doctrine because he failed to exhaust his intramilitary remedies. . . . . . . . . . . . . . . . . . . . . . . . . 20

    B.     Specialist Hall's claims are nonjusticiable under <u>Mindes</u> because judicial review would significantly interfere with military operations and intrude on sensitive disciplinary and personnel matters committed to military expertise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        1.     Plaintiffs' promotion challenge is nonjusticiable under <u>Mindes</u>. . . . . . . . . 25

        2.     Review of Plaintiffs' claims regarding Major Welborn's alleged misconduct would unjustifiably interfere with the Army's war-time operations and detract from mission readiness. . . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

Allen v. Wright,
    468 U.S. 737 (1984)........................................................................... 7, 17

Barber v. U.S. Army,
    No. 03-1056, 2003 WL 22969350 (10th Cir. Dec. 18, 2003) (unpublished). ................. 23

Bear Lodge Multiple Use Association v. Babbitt,
    175 F.3d 814 (10th Cir. 1999). ..................................................................... 17

Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,
    403 U.S. 388 (1971)....................................................................................... 20

Chappell v. Wallace,
    462 U.S. 296 (1983)................................................................................ 20, 25

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983).............................................................................. 8, 9, 17

Clinton v. Goldsmith,
    526  U.S. 529 (1999)............................................................................... 24

Costner v. Oklahoma Army National Guard,
    833 F.2d 905 (10th Cir. 1987). ......................................................... 24, 25, 26

Crawford v. Texas Army National Guard,
    794 F.2d 1034 (5th Cir. 1986). ............................................................. 22, 28

Daimler Chrysler Corp. v. Cuno,
    547 U.S. 332 (2006).................................................................................... 9

Darby v. Cisneros,
    509 U.S. 137 (1993)...................................................................................... 23

Daugherty v. United States,
    No. 02-5146, 2003 WL 21666677 (10th Cir. July 17, 2003) (unpublished). .................. 19

Dibble v. Fenimore,
    339 F.3d 120 (2d Cir. 2003). ........................................................................ 27

Duffy v. United States,
    966 F.2d  307 (7th Cir. 1992). ...................................................................... 22

Elk Grove Unified School District v. Newdow,
    542 U.S. 1 (2004)..................................................................... 7

Farmer v. Perrill,
    275 F.3d 958 (10th Cir. 2001). ................................................ 20

Feres v. United States,
    340 U.S. 135 (1950)................................................................ 25

Gilligan v. Morgan,
    413 U.S. 1 (1973).............................................................. 1, 18

Gonzalez v. Department of the Army,
    718 F.2d 926 (9th Cir. 1983). ...................................... 25, 26, 27

Gorsline v. U.S. Army Reserve,
    No. 93-3209, 1993 WL 525674 (10th Cir. Dec. 21, 1993) (unpublished). .............. 21, 22

Guerra v. Scruggs,
    942 F.2d 270 (4th Cir. 1991). ................................................ 22

Guy v. United States,
    608 F.2d 867 (Ct. Cl. 1979). ................................................. 27

Hatfill v. Gonzales,
    519 F. Supp. 2d 13 (D.D.C. 2007)............................................. 20

Helm v. State of California,
    722 F.2d 507 (9th Cir. 1983). ............................................ 25, 26

Holt v. United States,
    46 F.3d 1000 (10th Cir. 1995). ................................................ 7

Jones v. N.Y. State Division of Military & Naval Affairs,
    166 F.3d 45 (2d Cir. 1998). ................................................. 28

Keyes v. Sch. District No. 1,
    895 F.2d 659 (10th Cir. 1990). .............................................. 15

Knutson v. Wisconsin Air National Guard,
    995 F.2d 765 (7th Cir. 1993). ............................................... 28

Kreis v. Sec'y of Air Force,
    866 F.2d 1508 (D.C. Cir. 1989).............................................. 27

Lance v. Coffman,
  127 S. Ct. 1194 (2007). ............................................................ 8

Lindenau v. Alexander,
  663 F.2d 68 (10th Cir. 1981). ............................................... passim

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992). .......................................................... 8, 16

Mier v. Owens,
  57 F.3d 747 (9th Cir. 1995). ................................................... 27

Mindes v. Seaman,
  453 F.2d 197 (1971). ........................................................ passim

O'Shea v. Littleton,
  414 U.S. 488 (1973). ..................................................... 8, 16, 17

Orloff v. Willoughby,
  345 U.S. 83 (1953). ............................................................ 18

Parker v. Levy,
  417 U.S. 733 (1974). ........................................................... 18

Phelps v. Hamilton,
  122 F.3d 1309 (10th Cir. 1997). ............................................ 8, 17

Raines v. Byrd,
  521 U.S. 811 (1997). ......................................................... 8, 16

Raytheon Aircraft Co. v. United States,
  435 F. Supp. 2d 1136 (D. Kan. 2006). .......................................... 8

Reaves v. Ainsworth,
  219 U.S. 296 (1911). ........................................................... 18

Rhodes v. Stewart,
  488 U.S. 1 (1988). ............................................................. 10

Ricco v. Conner,
  146 Fed. Appx. 249, 253 (10th Cir. 2005) (unpublished). ....................... 20

Ricks v. Nickels,
  295 F.3d 1124 (10th Cir. 2002). ........................................ 1, 21, 28

Robertson v. United States,
No. 97-5183, 1998 WL 223159 (10th Cir. May 1, 1998) (unpublished). ...................... 23

SEC v. Warren,
583 F.2d 115 (3d Cir. 1978). ...................................................................... 15

Schulke v. United States,
544 F.2d 453 (10th Cir. 1976). ................................................................... 19

Simmat v. U.S. Bureau of Prisons,
413 F.3d 1225 (10th Cir. 2005). ........................................................ 20, 23, 29

Speigner v. Alexander,
248 F.3d 1292 (11th Cir.), cert.denied, 534 U.S. 1056 (2001). .................................... 27

Thornton v. Coffey,
618 F.2d 686 (10th Cir. 1980). ........................................................ 19, 21, 27

United Tribe of Shawnee Indians v. United States,
253 F.3d 543 (10th Cir. 2001). ................................................................. 21

Utah Animal Rights Coalition v. Salt Lake City Corp.,
371 F.3d 1248 (10th Cir. 2004). ............................................................... 15

Utah Association of Counties v. Bush,
455 F.3d 1094 (10th Cir. 2006). ............................................................... 17

Utah v. Babbitt,
137 F.3d 1193 (10th Cir. 1998). ................................................................. 7

Valley Forge Christian College v. Americans United for Separation of Church & State,
454 U.S. 464 (1982). ...................................................................... 8, 17

Warth v. Seldin,
422 U.S. 490 (1975). .................................................................. 8, 16, 17

Watson v. Arkansas National Guard,
886 F.2d 1004 (8th Cir. 1989). ............................................................ 25, 28

Whitmore v. Arkansas,
495 U.S. 149 (1990). ........................................................................... 9

Williams v. Wilson,
762 F.2d 357 (4th Cir. 1985). ................................................................. 22

# FEDERAL STATUTES AND REGULATIONS

10 U.S.C. § 628(g)...................................................................................................... 24

10 U.S.C. § 938........................................................................................................ 20, 22

10 U.S.C. § 1552...................................................................................................... 21, 22

32 C.F.R. § 581.3......................................................................................................... 21

Administrative Procedure Act, 5 U.S.C. § 551, <u>et seq.</u>........................................ 23, 24

Age Discrimination and Employment Act, 29 U.S.C. § 621, <u>et seq</u>........................... 25

Army Pamphlet 350-20............................................................................................ passim

Army Regulation 15-185. .......................................................................................... 21, 27

Army Regulation 600-20. ......................................................................................... passim

Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq</u>................................................. 25

Federal Rules of Civil Procedure

    Rule 12(b)(1)...................................................................................................... 3, 7

    Rule 12(h)(2). ....................................................................................................... 4

    Rule 65(d)............................................................................................................ 15

Uniform Code of Military Justice

    Article 15............................................................................................................. 13

    Article 92............................................................................................................. 13

    Article 133........................................................................................................... 13

    Article 134........................................................................................................... 13

# OTHER AUTHORITIES

Wright & Miller, 5B Federal Practice and Procedure: Civil § 1350 (3d ed. 2004)........................ 7

## STATEMENT OF THE CASE

The federal courts have long been reluctant to involve themselves in the internal affairs of the military, particularly where judicial interference would encroach upon expert military judgment. Underlying this deferential approach are two related concerns: first, a respect for the separation of powers, given that, under our constitutional scheme, "the complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches." Gilligan v. Morgan, 413 U.S. 1, 10 (1973); and second, a recognition that the judicial resolution of intramilitary disputes — which would call on fellow soldiers, including superior officers and their subordinates, to testify against one another — poses a distinct threat to the unique hierarchical and disciplinary structure of the military. Ricks v. Nickels, 295 F.3d 1124, 1129 (10th Cir. 2002). Here, the two principal allegations in Plaintiffs' Complaint — religious misconduct by a superior officer, and the discriminatory denial of a promotion — squarely implicate these concerns, touching directly upon the Army's authority to regulate the discipline and composition of its forces.

In July 2007, when Specialist Jeremy Hall and Major Freddy Welborn were stationed on a military base in Iraq as part of Operation Iraqi Freedom, Major Welborn allegedly interrupted a meeting of atheists and freethinkers that Specialist Hall had organized. But rather than filing a complaint with his chain of command — or his unit's Equal Opportunity Advisor, or a Chaplain, or an Inspector General, or anyone else authorized by Army regulations to field such a complaint — Specialist Hall contacted the Military Religious Freedom Foundation, which filed a lawsuit in this Court last September. Thus, the Army was deprived of the opportunity to promptly investigate the alleged misconduct and take appropriate disciplinary action; Specialist Hall missed out on the most efficient way to resolve his complaint; and this alleged incident — which took place in a war zone

1

nearly a year ago — remains the focal point of the present dispute.

Several months later, in December 2007, after his return from Iraq, Specialist Hall was allegedly told by his platoon sergeant at Fort Riley that he would be recommended for promotion, and would appear before a promotion board in February 2008. The next day, he claims, he was told that he would not, in fact, be recommended for promotion — a reversal in course that he attributes to discrimination on the basis of atheism. Again, rather than filing a complaint through established intramilitary channels, Specialist Hall, together with the Military Religious Freedom Foundation, filed a second lawsuit in this Court, naming Major Welborn, now a reservist in the Army Reserves, and Robert Gates, the Secretary of Defense, as Defendants.

Without ever having asked the Army to redress these grievances, Specialist Hall now asks this Court to issue an injunction prohibiting Major Welborn from (1) interfering with Specialist Hall's free speech and assembly rights; (2) engaging in conduct that amounts to the establishment of compulsory religious practices; and (3) retaliating against Specialist Hall, including with respect to his promotion prospects. Compl. ¶ 36(a)-(c). Plaintiffs also seek an injunction that would require Secretary Gates to "exercise his authority" to prevent Major Welborn, and other "similarly situated" subordinates, from infringing upon Specialist Hall's constitutional rights. Id. ¶ 36(d). As grounds for this relief, Plaintiffs assert claims under the First Amendment (Freedom of Speech, Freedom of Assembly, and Endorsement Clauses), the Fifth Amendment (Equal Protection and Due Process Clauses), and Article VI (Religious Test Clause). Id. ¶ 1.

There is, however, no need for the Court to reach the merits of this case in view of its significant jurisdictional defects. As an initial matter, Plaintiffs lack standing to seek prospective injunctive relief — the only relief they request — because they cannot establish that any injury allegedly caused by Major Welborn is likely to recur in the future. In fact, there is no reason to

believe that Specialist Hall and Major Welborn have encountered one another since July 2007. In addition, Specialist Hall's failure to exhaust his intramilitary remedies bars review of his claims under the doctrine of Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), adopted by the Tenth Circuit in Lindenau v. Alexander, 663 F.2d 68 (10th Cir. 1981). Further, his claims are nonjusticiable under the Mindes doctrine because judicial review would significantly interfere with Army operations and intrude on disciplinary and personnel decisions entrusted to military judgment.

Finally, Plaintiffs raise a host of sweeping — albeit vague — allegations that there is a "pattern and practice" of impermissible support for religion within the Department of Defense, ranging from the official endorsement of private religious organizations to the display of religious symbols on military property. This is a red herring. Plaintiffs identify no person, least of all Specialist Hall, who is affected by the alleged practices, and these allegations are precisely the kind of generalized grievances that are routinely rejected by the federal courts.

Shorn of this window dressing, Specialist Hall's central allegations are not systemic problems, but isolated incidents that implicate the Army's authority to regulate the discipline and composition of its forces. These are areas committed to military judgment, subject to the oversight of the political branches, and outside the competence — and jurisdiction — of the federal judiciary. At bottom, Specialist Hall's premature resort to the courts circumvented the intramilitary systems that would have most efficiently resolved his grievances.

For all of these reasons, Plaintiffs fail to establish subject matter jurisdiction over their claims, and the Court should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]

---

[1] Given these serious jurisdictional defects, Defendants do not at this time address the merits of those claims in any detail. Deferring consideration of the merits is consistent with the interests of judicial economy, the principle that jurisdictional issues must be resolved first, and the principle of constitutional avoidance. Defendants, of course, reserve the right to defend against the merits of

## STATEMENT OF FACTS

During the period in question, the Secretary of Defense was charged with the oversight of more than 1.3 million military personnel on active duty — about 500,000 of them Army members. Counting deployed members of the Reserves and National Guard, about 200,000 troops — some 125,000 of them Army members — were deployed in and around Iraq as part of Operation Iraqi Freedom.[2] Specialist Hall and Major Welborn were two such servicemen.

Specialist Hall, who is a member of the Army's 97th Military Police Battalion, was based at Combat Operations Base Speicher, Iraq ("COB Speicher"), from about September 28, 2006, to November 3, 2007. Compl. ¶ 8. Major Welborn is a reservist in the Army Reserves who served on active duty with the Army's 431st Civil Affairs Battalion as part of Operation Iraqi Freedom. See Affidavit of COL Wanda L. Good ("Good Aff.") ¶ 2(a)-(b) (annexed as Ex. A). Although Major Welborn is a superior officer to Specialist Hall, he has never been within Specialist Hall's chain of command. Decl. of MAJ Robert F. Cosgrove ("Cosgrove Decl.") ¶ 6 (annexed as Ex. B).

Specialist Hall asserts he is an atheist who "does not participate in religious services, ceremonies or rituals" that are conducted on base. Compl. ¶ 9. According to the Complaint, after securing permission from an Army chaplain, Specialist Hall organized a meeting of "atheists, freethinkers, [and] adherents to non-Christian religions" that took place at COB Speicher on July 31, 2007. Id. ¶ 11. An unspecified number of military and nonmilitary personnel, including Specialist

---

Plaintiffs' claims, if necessary, at a later time. See Fed. R. Civ. P. 12(h)(2) (defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . in any pleading allowed or ordered under Rule 7(a); . . . by a motion under Rule 12(c); . . . or at trial").

[2] U.S. Department of Defense, Active Duty Military Personnel Strengths by Regional Area and by Country (June 30, 2007), available at http://siadapp.dmdc.osd.mil/personnel/MILITARY/history/hst0706.pdf (last visited July 1, 2008).

Hall and Major Welborn, attended. Id. Plaintiffs allege that Major Welborn disrupted the meeting, interfering with the attendees' rights to discuss topics of their choosing. Id. ¶ 12. Plaintiffs further allege that Major Welborn threatened to charge Specialist Hall with a violation of the Uniform Code of Military Justice and threatened to prevent him from reenlisting in the Army. Id.

Plaintiffs do not allege that Specialist Hall filed a complaint against Major Welborn pursuant to the Army's equal opportunity regulations. He did not. Decl. of SFC Kristofer Britton ("Britton Decl.") ¶ 4 (annexed as Ex. C). Instead, on September 17, 2007, Plaintiffs filed a civil action in this Court claiming that Major Welborn's alleged actions violated Specialist Hall's constitutional rights, and further, that there is a "pattern and practice" of unconstitutional support of religion within the Department of Defense. Complaint, Case No. 07-2444 (JWL) (D. Kan. Sept. 17, 2007). That action was voluntarily dismissed on February 21, 2008.

In the meantime, on or about November 3, 2007, Specialist Hall was redeployed from Iraq to Fort Riley, Kansas. Compl. ¶ 14. According to the Complaint, on December 18, 2007, Specialist Hall's platoon sergeant, Sergeant First Class Michael VanHise, told Specialist Hall that he was eligible for a promotion and would appear before a promotion board in February 2008. Id. ¶¶ 15-16. The next day, however, Specialist Hall was allegedly informed that he would not, in fact, appear before the February 2008 promotion board. Id. ¶ 20. Specialist Hall was allegedly given several reasons for this decision, including that his unwillingness to pray with his troops hurt morale and limited his leadership potential. See id. ¶ 21. Specialist Hall was also allegedly told that his first sergeant, First Sergeant Ramon Ramirez, needed more time to consider whether he had the "grounding" to be promoted, id. ¶ 22, and that the promotion board's presiding officer, Command Sergeant Major Kevin Nolan, did not support his candidacy, see id. ¶¶ 22-23.

5

Plaintiffs do not allege that Specialist Hall filed a complaint under the Army's EO regulations concerning his promotion allegations. Plaintiffs likewise do not allege that Specialist Hall applied to the Army Board for Correction of Military Records for review of the promotion decision. He did neither. Instead, on March 5, 2008, Plaintiffs filed this lawsuit.

Major Welborn remained in Iraq until February 3, 2008. Good Aff. ¶ 2(a). He returned to a reserve status in the Army Reserves on February 17, 2008, id. ¶ 2(b), and is now an individual mobilization augmentee who performs his reservist duties in Japan as part of the Headquarters and Headquarters Company, 10th Area Support Group, United States Army Japan, see id. ¶ 2(c). Thus, Major Welborn was not in Specialist Hall's chain of command, see Cosgrove Decl. ¶ 6, or at Fort Riley, see Good Aff. ¶ 2(a), at the time of the Army's decision not to promote Specialist Hall. Plaintiffs do not allege otherwise. In fact, Plaintiffs do not allege that Specialist Hall and Major Welborn have ever crossed paths since their single encounter in Iraq in July 2007.

Specialist Hall is still stationed at Fort Riley, see Compl. ¶ 14, and remains eligible for promotion to the rank of Sergeant (E-5). Cosgrove Decl. ¶ 5.

## QUESTIONS PRESENTED

1.  Does Specialist Hall have standing to seek prospective injunctive relief against Major Welborn where he cannot demonstrate, and does not even allege, that any injury purportedly caused by Major Welborn is likely to recur in the future?

2.  Does an actual case or controversy exist with respect to Specialist Hall's request that Secretary Gates "exercise his authority" to prevent Major Welborn and other "similarly situated" subordinates from infringing upon his rights, where Secretary Gates already does just that through the Army's existing Equal Opportunity Program — the protections of which Specialist Hall failed to invoke?

3.  Do Plaintiffs have standing to challenge a purported "pattern and practice" of impermissible support of religion within the Department of Defense where they fail to identify any person who is harmed by those practices?

4.    Are Specialist Hall's claims barred under the doctrine of Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), adopted by the Tenth Circuit in Lindenau v. Alexander, 663 F.2d 68 (10th Cir. 1981), because he failed to exhaust his intramilitary remedies?

5.    Are Specialist Hall's claims nonjusticiable under the Mindes doctrine because judicial review would interfere with military operations and intrude on disciplinary and personnel matters committed to military expertise?

## STANDARD OF REVIEW

In reviewing a facial challenge to the existence of subject matter jurisdiction under Rule 12(b)(1), the Court must accept the well-pled allegations of the Complaint as true. Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). However, in assessing its jurisdiction, the Court has wide discretion to consider extra-pleading facts, such as those set forth in affidavits, and if necessary may resolve disputed jurisdictional facts, without converting the motion to one for summary judgment. See id. at 1003. Standing and justiciability are properly challenged under Rule 12(b)(1). See Utah v. Babbitt, 137 F.3d 1193, 1203 n.12 (10th Cir. 1998) (standing is jurisdictional); Wright & Miller, 5B Federal Practice and Procedure: Civil § 1350 (3d ed. 2004) ("Courts have recognized a variety of other defenses . . . when considering a Rule 12(b)(1) motion, including claims that . . . the subject matter is one over which the federal court should abstain from exercising jurisdiction.").

## ARGUMENT

## I.    ALL PLAINTIFFS LACK STANDING

The doctrine of standing imposes two sets of restraints on the exercise of federal judicial power: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies "judicially self-imposed limits" on the jurisdiction of the federal courts. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Together, these requirements ensure that the federal courts "exercise power only in the last resort," Allen v. Wright, 468 U.S. 737, 752 (1984), and that legal questions are resolved "in a concrete factual context

conducive to a realistic appreciation of the consequences of judicial action," Valley Forge Christian Coll. v. Americans United for Separation of Church & State, 454 U.S. 464, 472 (1982).

To establish Article III standing, a plaintiff must demonstrate the familiar elements of: (1) an injury in fact; (2) causation; and (3) redressability. Lance v. Coffman, 127 S. Ct. 1194, 1196 (2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)). As the parties invoking the Court's jurisdiction, Plaintiffs bear the burden "clearly to allege facts demonstrating" each of these three elements. Warth v. Seldin, 422 U.S. 490, 518 (1975). The necessary facts "must affirmatively appear in the record" and "cannot be inferred argumentatively from the pleadings." Phelps v. Hamilton, 122 F.3d 1309, 1326 (10th Cir. 1997).

While the Supreme Court has "always insisted on strict compliance" with standing requirements, it has cautioned that the inquiry must be "especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Raines v. Byrd, 521 U.S. 811, 819-20 (1997). "Where, as here, a party alleges that an executive agency is violating the Constitution, the court is required to be extremely cautious in deciding to hear the claim." Raytheon Aircraft Co. v. United States, 435 F. Supp. 2d 1136, 1157 (D. Kan. 2006).

A.   **Because Plaintiffs cannot demonstrate that any injury allegedly caused by Major Welborn is likely to recur in the future, they lack standing to sue for prospective injunctive relief against him**

To satisfy Article III's injury-in-fact requirement, Plaintiffs must establish a concrete and particularized injury that is actual or imminent, not speculative or hypothetical. Lujan, 504 U.S. at 560. Moreover, to obtain prospective injunctive relief — the only relief requested here — it is not enough to allege a past injury. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); O'Shea v. Littleton, 414 U.S. 488, 495-96 (1973) ("Past exposure to illegal conduct does not in itself show a

present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Rather, Plaintiffs must demonstrate that there is a "real and immediate threat" that they will suffer some <u>future</u> harm. <u>Lyons</u>, 461 U.S. at 102. The threatened injury must be "certainly impending" to satisfy the standing requirements for prospective relief. <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990); <u>Daimler Chrysler Corp. v. Cuno</u>, 547 U.S. 332, 345 (2006).

Here, Plaintiffs cannot establish — and do not even allege — that any injury purportedly caused by Major Welborn is likely to recur in the future. Indeed, Plaintiffs make no attempt to establish that Specialist Hall will ever again cross paths with Major Welborn, let alone be injured by him. According to the Complaint, Specialist Hall has encountered Major Welborn only once: on a military base in Iraq on July 31, 2007. <u>See</u> Compl. ¶¶ 11-13. Both men have since left Iraq. Specialist Hall is stationed at Fort Riley, and Major Welborn, who is no longer on active duty, performs his reservist duties in Japan, half a world away. <u>See</u> Good Aff. ¶ 2(c). And Major Welborn has never been in Specialist Hall's chain of command, <u>see</u> Cosgrove Aff. ¶ 6, and thus did not — indeed, could not — play a role in any promotion decision regarding Specialist Hall.

Accordingly, Major Welborn poses no "immediate" or "certain" threat to Specialist Hall's constitutional rights. <u>See</u> <u>Lyons</u>, 461 U.S. at 102; <u>Whitmore</u>, 495 U.S. at 158. Therefore, Plaintiffs lack standing to sue for an injunction against Major Welborn or an injunction requiring Secretary Gates to monitor Major Welborn's behavior.

**B. Because Secretary Gates already exercises his authority to prevent constitutional violations through the Army's existing Equal Opportunity Program — which Specialist Hall failed to invoke — there is no live controversy with respect to Plaintiffs' request for injunctive relief against him**

The injunction that Plaintiffs seek against Secretary Gates would require him to "exercise his authority" to prevent not only Major Welborn, but also other "subordinates similarly situated," from

infringing upon Specialist Hall's constitutional rights. Compl. ¶ 36(d). The Complaint makes no attempt to identify these other subordinates or to limit the potentially far-reaching scope of such an injunction. Indeed, given the breadth of Plaintiffs' "pattern and practice" allegations, discussed in the following section, it appears that Plaintiffs seek a massive restructuring of how the Department of Defense protects soldiers' constitutional rights and addresses issues of religious discrimination. As such, the relief that Plaintiffs request has the potential to reach all 1.3 million active-duty subordinates of the Secretary of Defense.

The only realistic way for the Secretary of Defense to "exercise his authority" to protect the constitutional rights of such a vast number of subordinates is to craft policies and procedures that affirmatively protect those rights, and to delegate enforcement authority to the individual branches of the Armed Forces. The Secretary has done exactly that. As described below, pursuant to Department of Defense ("DOD") Directive 1350.2, the Army has established a comprehensive Equal Opportunity Program to protect soldiers' rights and, through its complaint process, correct any violations. Thus, a system already exists by which the Secretary "exercise[s] his authority [to] prevent his subordinate[s] . . . from infringing upon [Specialist] Hall's [c]onstitutional rights." Compl. ¶ 36(d).

It is axiomatic that federal court jurisdiction under Article III is limited to actual cases or controversies. "The real value of the judicial pronouncement — what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion — is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (citation omitted). Because Secretary Gates already does what Plaintiffs ask the Court to order him to do, there is simply no live controversy with respect to the remainder of their request for relief against him.

1. **The Secretary of Defense has directed the Army to develop policies and procedures consistent with the Department of Defense's prohibition of religious discrimination**

Because "[u]nlawful discrimination . . . is contrary to good order and discipline and is counter-productive to combat readiness and mission accomplishment," it is the policy of the Department of Defense to "[p]rovide for an environment that is free from unlawful discrimination" on the basis of race, color, national origin, religion, or sex. DOD Directive 1350.2, ¶¶ 4.2, 4.6, E2.1.16 (Aug. 18, 1995) (annexed as Ex. D). Under this policy, the Secretary of each branch of the Armed Forces is directed to develop policies to prevent unlawful discrimination, to establish procedures governing the submission and investigation of complaints of discrimination, and to ensure that appropriate disciplinary action is taken if such complaints are substantiated. Id. ¶¶ 4.1, 6.2.

2. **The Army's Equal Opportunity Program is a comprehensive system that protects servicemembers' constitutional rights**

Consistent with this directive, the Army has established a comprehensive Equal Opportunity Program, which is outlined in Chapter 6 of Army Regulation 600-20 ("Army Command Policy") (annexed as Ex. E). Those regulations set forth the Army's policy to "provide EO and fair treatment for military personnel . . . without regard to race, color, gender, religion, [or] national origin, and [to] provide an environment free of unlawful discrimination and offensive behavior." Army Reg. 600-20, ¶ 6-2(a). This policy applies fully to promotion decisions. Id. ¶ 6-2(b) ("Soldiers will not be . . . promoted . . . on the basis of . . . religion . . . ."). Commanders are responsible for implementing the EO Program within their units, and are required to publish command-level EO policy statements, assign EO personnel to their staffs, conduct periodic EO "climate assessments" of their units, and train soldiers about their EO rights and responsibilities. Id. ¶ 6-3(i).

A central part of the Army's EO Program is its comprehensive Complaint Processing System. An aggrieved soldier may make either an informal or a formal EO complaint. An informal complaint is unwritten, and is typically resolved through "discussion, problem identification, and clarification of the issues" with the help of another unit member or someone in the soldier's chain of command. Id. ¶ D-1(a)(1). If the soldier is dissatisfied with the resolution of an informal complaint, his sole recourse is to file a formal complaint. DOD Directive 1350.2, ¶ 6.2.10. Unlike informal complaints, formal complaints "require specific actions, are subject to timelines, and require documentation of the actions taken." Army Reg. 600-20, ¶ D-1(b)(1). To "ensur[e] the availability of witnesses, accurate recollection of events, and timely remedial action," soldiers generally must file formal complaints within 60 days of the alleged incident. Id. ¶ D-1(b)(5).

To facilitate prompt resolution of EO issues at the lowest possible level, soldiers are encouraged to submit EO complaints through their chain of command; however, complaints also may be submitted through a number of other channels. Indeed, Army regulations specifically provide that if a soldier should "feel uncomfortable" filing a complaint with his chain of command, or if the complaint is against a member of that chain of command, he may submit the complaint to: (1) someone in a higher echelon of his chain of command; (2) his unit's EO Advisor; (3) an Inspector General; (4) a Chaplain; (5) medical agency personnel; or (6) the Staff Judge Advocate. Id. ¶¶ 6-3(k)(14) & D-2 (incorporating id. ¶ D-1(a)(2)). Soldiers may also request legal assistance if they believe they have been denied a federally protected right. Id. ¶ 6-13.

Upon receipt of a formal complaint, a Commander has 14 days to conduct an investigation, either personally or through an investigating officer. Id. ¶ D-5. The Commander must also implement a plan to protect the complainant from reprisal, id. ¶ D-4(c), and must give the complainant periodic feedback on the status of the investigation. Id. ¶ D-7(b).

If the complaint is substantiated, it is a Commander's duty to take corrective action.  Id. ¶ 6-3(i)(17).  Violations of EO policy, like violations of any lawful order, subject the offender to a wide range of potential punishments.  Possible administrative sanctions include formal counseling, letters of reprimand, withholding of privileges, unfavorable performance reviews, administrative reduction, transfer to another unit, bar to reenlistment, and discharge from the Army.  Id. ¶ D-7(a)(1)(a).  Moreover, sufficiently serious breaches of EO policy are punishable under the Uniform Code of Military Justice, id. ¶ D-7(a)(1)(b); for example, under Article 92 (failure to obey an order or regulation), Article 133 (conduct unbecoming), and Article 134 (bringing discredit upon the Armed Forces).  See Army Pamphlet 350-20 ("Unit Equal Opportunity Training Guide"), ¶ 6-3 & fig. 6-1 (annexed as Ex. F).  Charges under the UCMJ may lead to nonjudicial punishment under Article 15, or may result in a conviction by court martial.  See Army Reg. 600-20, ¶ D-7(a)(1)(b).

The regulations also provide for an extensive appeals process.  A soldier dissatisfied with the resolution of a complaint can appeal to the next highest commander in his chain of command.  Id. ¶ D-8.  Once an appeal is filed, the original investigating commander has 3 days to refer the appeal to the next highest commander, who then has 14 days to act on the appeal.  Id. ¶ D-8(b)-(c).  Further appeals can be taken up through the chain of command to the brigade level, from which an appeal lies to the General Courts-Martial Convening Authority, whose decisions are final.  Id. ¶ D-8(c), D-9.

Finally, the entire complaint submission and resolution process is subject to multiple layers of oversight and follow up.  First, a Commander must report any formal complaint to the General Courts-Martial Convening Authority within 3 days of its receipt, and must submit periodic progress reports until the complaint is resolved.  Id. ¶ D-4(a).  Second, an EO Advisor must conduct a follow-up assessment of all formal complaints, substantiated or not, within 45 days of a final decision, and must then present his findings to the Commander within 15 days.  Id. ¶ D-10.  Third, all formal

complaints are reported by each command in quarterly and annual reports. Army Pamphlet 350-20, ¶ 8-5(c). Fourth, even where a complaint is unsubstantiated, a Commander must determine whether the allegations are indicative of problems that might benefit from EO initiatives or other leadership actions. Army Reg. 600-20, ¶ D-7(a)(2).

3. **Because Secretary Gates already "exercises his authority" to prevent constitutional violations through the Army's Equal Opportunity Program, an injunction against him would, in effect, be advisory**

The components of the Army's EO Program — its complaint procedures, investigation timelines, appeal rights, and oversight and follow-up measures — work together to achieve the Army's goal of equal opportunity. But the command cannot be expected to remedy EO violations it is not made aware of. Accordingly, while the Army's EO regulations extend a number of rights to soldiers, they also charge soldiers with a key responsibility: "Individuals are responsible for . . . [a]dvising the command of any . . . unlawful discrimination complaints and providing the command an opportunity to take appropriate action to rectify/resolve the issue." Army Reg. 600-20, ¶ 6-9(b)(1). In an organization as immense and widely dispersed as the Army — with more than 500,000 active-duty personnel, more than 100,000 of whom are deployed in and around Iraq — it is essential that each soldier live up to this duty.

Specialist Hall declined to file an EO complaint about any of the allegations raised in this case, Britton Decl. ¶ 4, which deprived the Army, and by extension, Secretary Gates, of the opportunity to address and remedy his concerns. Plaintiffs now ask the Court to order the Secretary to "exercise his authority [to] prevent his subordinate[s] . . . from infringing upon [Specialist] Hall's [c]onstitutional rights." Compl. ¶ 36(d). But Secretary Gates already does just that, in the only realistic way possible: through the Army's EO Program. Thus, the remedy Plaintiffs seek already exists — Specialist Hall simply failed to invoke it. There is therefore no live case or controversy with

respect to Plaintiffs' request for prospective injunctive relief against Secretary Gates. See Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1256 (10th Cir. 2004) (noting, in the related context of mootness, that the "crucial question is whether 'granting a present determination of the issues offered . . . will have some effect in the real world'") (citation omitted; ellipsis in original).[3]

C.     **Plaintiffs lack standing to challenge the purported "pattern and practice" of impermissible support of religion within the Department of Defense because they fail to establish that Specialist Hall — or anyone else — has been personally injured by those alleged practices**

Plaintiffs also allege, "[o]n information and belief," that there is a "pattern and practice of constitutionally impermissible advancements of religious beliefs within the Department of Defense." Compl. ¶ 26. Plaintiffs enumerate a variety of these purported practices, including: the use of military personnel and equipment for religious events; the official endorsement of private religious organizations; granting private religious organizations access to military installations; permitting

---

[3] Moreover, the injunction that Plaintiffs propose would not redress any concrete injury. Plaintiffs seek an injunction that would prohibit Major Welborn from "interfering with [Specialist] Hall's rights to free speech and assembly," "establishing compulsory religious practices," or "retaliat[ing]" against Specialist Hall. Compl. ¶ 36(a)-(c). Plaintiffs would also have the Court require Secretary Gates to prevent Major Welborn (and others) from "infringing upon Specialist Hall's constitutional rights." Id. ¶ 36(d). In short, Plaintiffs ask the Court to issue an injunction requiring Major Welborn to respect Specialist Hall's constitutional rights, and an injunction requiring Secretary Gates to ensure that Major Welborn does so.

It is well established that such generic "obey the law" injunctions are inappropriate. Keyes v. Sch. Dist. No. 1, 895 F.2d 659, 668-69 (10th Cir. 1990). Here, the proposed injunction would redress nothing, for Defendants are, of course, already obligated to comply with the Constitution. See SEC v. Warren, 583 F.2d 115, 121 (3d Cir. 1978) (affirming dissolution of injunction requiring defendants to merely "obey the law" in the future, "a requirement with which they must comply regardless of the injunction"). Moreover, such an injunction could not be squared with Rule 65(d), which requires that every injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C); see Keyes, 895 F.2d at 668 & n.5 (striking an injunction requiring defendants "to use their expertise and resources to comply with the constitutional requirement of equal education opportunity for all").

displays of religious symbols on military property; allowing military e-mail accounts to be used for religious purposes; and permitting the proselytization of servicemembers. Id. Although Plaintiffs do not specifically ask the Court to enjoin these supposed practices, see id. ¶ 36, they presumably will argue that these "pattern and practice" allegations suffice to create standing where, as shown above, it does not otherwise exist. However, Plaintiffs' burden to establish that they are in imminent danger of sustaining a concrete and particularized injury requires far more specificity. See Lujan, 504 U.S. at 560; Raines, 521 U.S. at 819 ("[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized to him.").

In O'Shea v. Littleton, 414 U.S. 488 (1974), for example, the plaintiffs alleged that a county magistrate and judge were engaged in a pattern and practice of unconstitutional conduct in the administration of the criminal justice system. As is the case here, at least one of the allegations in O'Shea was made solely "on information and belief," and no named plaintiff was "identified as himself having suffered any injury in the manner specified." Id. at 492, 495. Because the complaint thus alleged injury "in only the most general terms," and the threat of a specific injury to the individual plaintiffs was too speculative, the Supreme Court found that standing was lacking. Id. at 495; see also id. at 496 ("We thus do not strain to read inappropriate meaning into the conclusory allegations of this complaint."). The Court reached a similar conclusion in Warth v. Seldin, 422 U.S. 490, 518 (1975), holding that the petitioners lacked standing to bring a constitutional challenge to a zoning ordinance because their complaint did not set forth allegations demonstrating how they were individually affected by the ordinance. See id. at 516-17.

The Complaint in this case likewise fails to connect its nebulous "pattern and practice" allegations to Specialist Hall in any manner. Plaintiffs allege no facts to demonstrate that Specialist Hall has ever personally been subjected to any of these practices, let alone that there is a "real and

immediate threat" that he will face them in the future.  Lyons, 461 U.S. at 102.  In fact, Plaintiffs allege no facts to establish that any particular soldier has been, or will be, subjected to these practices.[4]  As the Court found in O'Shea and Warth, such nonspecific and conclusory allegations are simply insufficient to establish standing.  See also Bear Lodge Multiple Use Ass'n v. Babbitt, 175 F.3d 814, 821 (10th Cir. 1999) ("[T]o satisfy Article III's case or controversy requirement, a litigant in federal court is required to establish his own injury in fact."); Phelps, 122 F.3d at 1326 (facts necessary to support standing "cannot be inferred argumentatively from the pleadings").

Absent any allegation that the purported practices harm Specialist Hall in an individualized, concrete way, Plaintiffs are left to argue that they are injured by their mere perception that such practices exist.  But this objection, without more, is nothing but a generalized grievance that Defendants' conduct violates the Constitution, and the Supreme Court has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Allen v. Wright, 468 U.S. 737, 754 (1984).  Establishment Clause claims are not exempt from this principle.  Valley Forge, 454 U.S. at 487 ("[A] claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal [such] discoveries in federal court.").  As in Valley Forge, although Plaintiffs suggest that their vague "pattern and practice" accusations are evidence of constitutional error, they "fail to identify any personal injury suffered by them as a

---

[4] The Military Religious Freedom Foundation ("MRFF") has no greater standing than does Specialist Hall.  MRFF asserts no injury to itself as an organization; rather, its standing is premised on injuries allegedly suffered by the only one of its members it identifies in the Complaint:  Specialist Hall.  See Compl. ¶ 2.  As such, MRFF could have associational standing only if, among other requirements, Specialist Hall "would otherwise have standing to sue in [his] own right." Utah Ass'n of Counties v. Bush, 455 F.3d 1094, 1099 (10th Cir. 2006) (citation omitted).  Thus, MRFF's participation in this lawsuit does not affect the standing analysis.

consequence." Id. at 485. Thus, these allegations do not make out an "injury sufficient to confer standing under Article III." Id.

For these reasons, Plaintiffs lack standing to seek prospective injunctive relief against Major Welborn or Secretary Gates, and likewise lack standing to seek review of their "pattern and practice" allegations.

## II.    PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE

The tradition of judicial deference to the internal affairs of the military has a long pedigree. In Reaves v. Ainsworth, 219 U.S. 296 (1911), the Supreme Court, in declining to review an Army medical board's decision that the plaintiff was medically unfit for service, said: "To be promoted or to be retired may be the right of an officer, . . . but greater even than that is the welfare of the country, and, it may be, even its safety, through the efficiency of the Army." Id. at 306. Decades later, in Orloff v. Willoughby, 345 U.S. 83 (1953), in refusing to review an Army doctor's claim that his duty assignments were discriminatorily made, the Supreme Court announced the oft-cited principle that "judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States." Id. at 93-94. More recently, in Gilligan v. Morgan, 413 U.S. 1 (1973), the Supreme Court declined to address a challenge to various training and operations decisions of the Ohio National Guard, finding it "difficult to conceive of an area of governmental activity in which the courts have less competence." Id. at 10.

This is not to say that the federal courts have no role in reviewing military decisionmaking. Indeed, the Supreme Court has recognized that "members of the military community enjoy many of the same rights and bear many of the same burdens as do members of the civilian community." Parker v. Levy, 417 U.S. 733, 751 (1974). Nevertheless, consistent with the judiciary's reluctance to

second-guess judgments requiring military expertise, inundate the courts with servicemembers' complaints, and interfere with military readiness, the Tenth Circuit has recognized that "[t]he role of the federal judiciary with respect to the internal affairs of the military is narrow and restricted." Schulke v. United States, 544 F.2d 453, 455 (10th Cir. 1976). "This policy is particularly compelling with regard to military promotions." Thornton v. Coffey, 618 F.2d 686, 691 (10th Cir. 1980).

To determine whether a claim implicating the internal affairs of the military is justiciable, the Tenth Circuit applies the test devised by the Fifth Circuit in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971). Lindenau v. Alexander, 663 F.2d 68, 70 (10th Cir. 1981) (adopting Mindes); see also Daugherty v. United States, No. 02-5146, 2003 WL 21666677, at *4-5 (10th Cir. July 17, 2003) (unpublished) (applying Mindes). Under the Mindes doctrine, "a court contemplating review of an internal military determination" must first determine "[1] whether the case involves an alleged violation of a constitutional right, applicable statute, or regulation, and [2] whether intra-service remedies have been exhausted." Lindenau, 663 F.2d at 71 (citation omitted). If that two-factor threshold test is satisfied, the court must then weigh the following four factors: "[1] the nature and strength of the challenge to the military determination, [2] the potential injury to the plaintiff if review is refused, [3] the type and degree of anticipated interference with the military function, and [4] the extent to which military discretion or expertise is involved in the challenged decision." Id. (citation omitted).

In this case, Plaintiffs' claims falter at Mindes's threshold step because Specialist Hall failed to pursue, let alone exhaust, his intraservice remedies with respect to either the alleged disruption of the atheist meeting in Iraq or the allegedly discriminatory denial of a promotion at Fort Riley. Even if he had, however, Plaintiffs' claims would be barred under Mindes's balancing test because judicial intervention would interfere with Army operations and infringe upon disciplinary and personnel

matters committed to military expertise.[5]

### A. Specialist Hall's claims are barred under the Mindes doctrine because he failed to exhaust his intramilitary remedies

"The special status of the military has required, the Constitution has contemplated, Congress has created, and [the Supreme] Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel." Chappell v. Wallace, 462 U.S. 296, 303-04 (1983). Acting within that plenary authority, Congress "has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure." Id. at 302.

The resulting system provides several expansive and, at times, overlapping mechanisms for servicemembers to seek redress of grievances such as those raised by Specialist Hall. For example, soldiers who feel they have been wronged by their commanding officer, and are refused relief by that officer, have a statutory right to complain to any superior commissioned officer, who must submit the complaint to the officer exercising general court-martial jurisdiction for an investigation. 10 U.S.C. § 938. An aggrieved soldier can also ask the Board for Correction of Military Records

---

[5] This is an action for injunctive relief against federal officials. Bivens has no application to such official capacity claims for injunctive relief. Cf. Bivens v. Six Unknown Named Agents of the Fed Bureau of Narcotics, 403 U.S. 388 (1971). A proper Bivens claim lies for (1) damages against a federal officer sued in his (2) individual capacity. See Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 n.9 (10th Cir. 2005) ("[A] Bivens claim lies against the federal official in his individual capacity — not, as here, against officials in their official capacity."); Ricco v. Conner, 146 Fed. Appx. 249, 253 (10th Cir. 2005) (unpublished) ("Bivens is best understood as providing only a cause of action for damages."). Suits for injunctive relief such as this one will not lie against federal officials in their individual capacities, because it is only the government, through its officials, that can provide the relief sought: compliance with the Constitution. Hatfill v. Gonzales, 519 F. Supp. 2d 13 (D.D.C. 2007) (collecting cases). Thus, Plaintiffs' claims lie against Defendants in their official capacities alone and, as such, run against the United States. See Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001) ("[A]ny action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States."). Accordingly, Plaintiffs' citation of Bivens, see Compl. ¶ 1, is inapposite.

("BCMR") for his branch of service to correct any "error" or "injustice" in his record.  10 U.S.C. § 1552(a); <u>see also</u> 32 C.F.R. § 581.3; Army Reg. 15-185 (annexed as Ex. G).  The broad authority of those Boards extends to any "document or other record" and to "any other military matter" affecting the servicemember, 10 U.S.C. § 1552(g), including personnel matters such as promotion and discharge, <u>see</u> <u>Thornton</u>, 618 F.2d at 691-93 (promotion); <u>Gorsline v. U.S. Army Reserve</u>, No. 93-3209, 1993 WL 525674, at *1 (10th Cir. Dec. 21, 1993) (unpublished) (discharge).  And, of course, servicemembers can seek redress of grievances, including complaints of religious discrimination, through their branch's EO Program.  DOD Directive 1350.2; Army Reg. 600-20, Chapter 6.

In view of this expansive framework of intramilitary remedies, strict application of the <u>Mindes</u> exhaustion requirement is particularly appropriate.  Generally speaking, exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  <u>United Tribe of Shawnee Indians v. United States</u>, 253 F.3d 543, 550 (10th Cir. 2001).  Federal resources are conserved, and separation-of-powers concerns respected, when agencies are given the opportunity to bring their expertise to bear on complex problems, and perhaps correct their own errors, before judicial intervention.  <u>See</u> <u>id.</u>  These concerns are magnified in the military context, where the Supreme Court has emphasized the need to "limit litigation that could undermine the unique hierarchical and disciplinary structure of the military" and has repeatedly recognized that "governance and oversight of the military have been constitutionally committed to Congress and the executive branch."  <u>Ricks v. Nickels</u>, 295 F.3d 1124, 1129 (10th Cir. 2002).  Indeed, the Tenth Circuit has "emphasized that application of the doctrine of exhaustion is particularly desirable in matters of military promotion."  <u>Thornton</u>, 618 F.2d at 692 (citation omitted).

Insistence on exhaustion reinforces these principles of inter-branch comity and avoids nullifying the intramilitary remedial mechanisms designed by Congress and the Executive Branch. Accordingly, courts in this Circuit and elsewhere have insisted on exhaustion in the military context. See id. at 691-92 (pre-Lindenau) (guardsman asserting race-based discrimination claim required to "resort first to the BCMR to allow the military an opportunity to exercise its own expertise") (citation omitted); Gorsline, 1993 WL 525674, at *1 (unpublished) (affirming dismissal of wrongful discharge claim as a "nonjusticiable military controversy" because reservist failed to exhaust remedies before the BCMR); Williams v. Wilson, 762 F.2d 357, 360 (4th Cir. 1985) ("Under the Mindes . . . analysis, [the plaintiff's] failure to exhaust intraservice administrative remedies made his federal claim a nonjusticiable military controversy."); Guerra v. Scruggs, 942 F.2d 270, 276-77 (4th Cir. 1991) (reversing grant of preliminary injunction because plaintiff failed to exhaust intramilitary remedies under Mindes); Crawford v. Texas Army Nat'l Guard, 794 F.2d 1034, 1036 (5th Cir. 1986) (under Mindes, "exhaustion is a prerequisite to judicial review" of personnel grievances appealable to the BCMR); see also Duffy v. United States, 966 F.2d 307, 311 (7th Cir. 1992) (servicemembers typically "will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies").

Here, it cannot be disputed that Specialist Hall failed to exhaust. He did not file a formal EO complaint about any of the allegations in the Complaint, Britton Decl. ¶ 4, and does not allege otherwise. Nor does he allege that he has applied to the BCMR for relief with respect to his promotion claims, 10 U.S.C. § 1552(a), (g), or that he has exercised his right to complain that he was wronged by his commanding officer. 10 U.S.C. § 938. Thus, because Specialist Hall has failed to

meet <u>Mindes</u>'s threshold exhaustion requirement, the Court should find his claims nonjusticiable.[6]

Indeed, to overlook his failure to exhaust would effectively void a provision of Army Regulation 600-20, which holds soldiers "responsible for . . . [a]dvising the command of any . . . unlawful discrimination complaints and providing the command an opportunity to take appropriate action to rectify/resolve the issue."  Army Reg. 600-20, ¶ 6-9(b)(1).  The Court should hesitate long before calling that regulation into question.

**B.    Specialist Hall's claims are nonjusticiable under <u>Mindes</u> because judicial review would significantly interfere with military operations and intrude on sensitive disciplinary and personnel matters committed to military expertise**

Even if Specialist Hall had exhausted his intramilitary remedies, his claims would be nonjusticiable under <u>Mindes</u>'s balancing test, which weighs "[1] the nature and strength of the challenge to the military determination, [2] the potential injury to the plaintiff if review is refused, [3] the type and degree of anticipated interference with the military function, and [4] the extent to

---

[6] The Supreme Court's decision in <u>Darby v. Cisneros</u>, 509 U.S. 137 (1993), does not change this analysis.  In two unpublished dispositions, the Tenth Circuit has reserved the question whether <u>Mindes</u>'s exhaustion requirement survived <u>Darby</u>'s holding that a plaintiff seeking review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, <u>et seq.</u>, need not exhaust administrative remedies where no statute or agency rule requires exhaustion as a prerequisite to judicial review.  <u>See</u> <u>Barber v. U.S. Army</u>, No. 03-1056, 2003 WL 22969350, at *1 (10th Cir. Dec. 18, 2003) (unpublished); <u>Robertson v. United States</u>, No. 97-5183, 1998 WL 223159, at *2-3 & n.2 (10th Cir. May 1, 1998) (unpublished).  However, <u>Darby</u> was explicitly limited "to actions brought under the APA," and the Court expressly stated that "the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA."  <u>Darby</u>, 509 U.S. at 153-54.

Plaintiffs do not bring this action under the APA.  In fact, they identify no administrative proceeding that they seek to review.  <u>Cf.</u> <u>Simmat</u>, 413 F.3d at 1233 n.9 (describing scope of review under the APA).  Rather, Plaintiffs appear to plead claims that arise directly under the Constitution, appealing to the Court's traditional equitable powers to remedy constitutional violations under its general federal question jurisdiction.  <u>See id.</u> (noting the existence of a cause of action at equity under the jurisdictional basis of 28 U.S.C. § 1331); Compl. ¶ 1 (describing this lawsuit as a "[c]onstitutional common law" action); <u>id.</u> ¶ 6 (invoking 28 U.S.C. § 1331 as a jurisdictional basis); <u>id.</u> ¶ 36 (seeking only injunctive relief).  Because Plaintiffs raise not an APA claim, but a claim for an injunction under the Court's equity jurisdiction, <u>Darby</u> is, by its own terms, inapplicable.  <u>See</u> <u>Darby</u>, 509 U.S. at 153.

which military discretion or expertise is involved in the challenged decision." Lindenau, 663 F.2d at 71 (citation omitted). This test "essentially balances the interests of the parties, with a preference against interference in the military." Costner v. Okla. Army Nat'l Guard, 833 F.2d 905, 907 (10th Cir. 1987).

To be sure, several categories of military action generally remain justiciable under Mindes. For example, courts may review the constitutionality of statutes, regulations, and executive orders related to the military, including selective service induction procedures; determine whether military officials have acted outside the scope of their statutory powers or violated their own regulations; and review court-martial convictions alleged to be constitutionally defective. Lindenau, 663 F.2d at 71 (citing Mindes, 453 F.2d at 199-201). Courts may also review BCMR decisions for arbitrariness under the deferential standards of the Administrative Procedure Act. See Clinton v. Goldsmith, 526 U.S. 529, 539 (1999) (citing 5 U.S.C. §§ 704, 706).[7]

No such claim is raised in this case. Plaintiffs challenge the constitutionality not of a statute or regulation, but of discrete disciplinary and personnel judgments that are committed to military expertise. Outside the narrow confines of APA review of a BCMR decision, such challenges are nonjusticiable under Mindes. The reason for this distinction is plain: "There is a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision. In the first instance, a legal analysis is required; one which courts are uniquely qualified to perform. The second involves a fact-specific

---

[7] In addition, Courts may review a determination by the Secretary of a military department not to convene a special selection board where an officer was not considered by a promotion board due to administrative error, or was considered by a promotion board in a materially unfair manner. See 10 U.S.C. § 628(g). However, that provision applies only to officers, not enlisted members such as Specialist Hall, and therefore has no application in this case. See id. § 611(a).

inquiry into an area affecting military order and discipline and implicating all the concerns on which Feres [v. United States, 340 U.S. 135 (1950),] and Chappell are premised." Watson v. Arkansas Nat'l Guard, 886 F.2d 1004, 1010 (8th Cir. 1989). Accordingly, if the Court finds it necessary to reach this issue, it should find all of Plaintiffs' claims nonjusticiable under Mindes.

### 1. Plaintiffs' promotion challenge is nonjusticiable under **Mindes**

Plaintiffs' promotion challenge is foreclosed by the Tenth Circuit's application of Mindes in Costner v. Oklahoma Army National Guard, 833 F.2d 905 (10th Cir. 1987). The plaintiff in Costner brought suit under the Age Discrimination and Employment Act, 29 U.S.C. § 621, et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., alleging that the Guard decided not to retain him as a technician based on his age. Costner, 833 F.2d at 907. Adopting the Ninth Circuit's analysis in Helm v. State of California, 722 F.2d 507, 510 (9th Cir. 1983), a similar military age discrimination case, the Costner court determined that, under the second factor of the Mindes balancing test, the potential injury to the plaintiff was "only economic." Costner, 833 F.2d at 908 (citation omitted). On the other side of the scale, as to the third factor, it found that review of the plaintiff's claims "would significantly interfere with military functions" because it would require "[s]crutiniz[ing] numerous personnel decisions by many individuals." Id. (citation omitted). And as to the fourth factor, the Costner court agreed that "an inquiry into promotion decisions 'would involve the court in a very sensitive area of military expertise and discretion.'" Id. (citation omitted). Accordingly, the court concluded that the plaintiff's discharge claims were "nonreviewable" under Mindes. Id.

Although Costner is conclusive on the point, also instructive is the Ninth Circuit's decision in Gonzalez v. Department of the Army, 718 F.2d 926 (9th Cir. 1983), on which the Ninth Circuit relied heavily in Helm. The plaintiff in Gonzalez brought a Title VII claim alleging that he had been

denied several promotions based on his race. Id. at 927. He also alleged that the Army had a practice of intentional race discrimination that included a reliance on officer rating reports that operated in a racially biased manner, an inadequate minority recruitment policy, and other generalized complaints. Id. Applying Mindes, the court acknowledged that the plaintiff alleged "recognized" constitutional claims, but, as to the second factor, found that he would not be substantially harmed by the denial of review, noting that he remained eligible for future promotions, the denial of which could be challenged administratively. Id. at 930. The court likewise found that the third and fourth Mindes factors cut against review. Judicial inquiry would cause "significant" interference with Army operations because "evidence of [the plaintiff's] performance would have to be gathered for the 10-year period in question" and "[t]he officers who participated in reviewing [his] performance would have to be examined to determine the grounds and motives for their ratings." Id. This inquiry, the court concluded, would engage the court in a "very sensitive area of military expertise and discretion." Id.

Plaintiffs' promotion claims are indistinguishable from those in Costner, Helm, and Gonzalez, which establish that (aside from APA review of a BCMR decision) challenges to promotion decisions such as this one are nonjusticiable under Mindes, even where discrimination is alleged. Under the Mindes balancing test,[8] Specialist Hall would face little harm if review were denied. To begin, Specialist Hall requests no corrective relief with respect to his promotion claim; rather, he appears to seek only a forward-looking injunction that would require Major Welborn to refrain from retaliating against him with respect to his promotion prospects. See Compl. ¶ 36(c). He does not ask the Court to grant him a promotion — perhaps understandably, for it has no such power. See

---

[8] This discussion assumes arguendo that Plaintiffs state a "recognized" constitutional claim, see Gonzalez, 718 F.2d at 930 — a point that Defendants do not concede, see supra n.1.

Thornton, 618 F.2d at 692-93 (court cannot order a military promotion); Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (request for retroactive promotion "falls squarely within the realm of nonjusticiable military personnel decisions"); Guy v. United States, 608 F.2d 867, 874 (Ct. Cl. 1979) (courts cannot order promotion absent "clear, legal entitlement to it" because "[p]romotion under the selection board system results from the exercise of discretionary functions reserved for the Executive branch").  Moreover, like the plaintiff in Gonzalez, Specialist Hall remains eligible for promotion, Cosgrove Decl. ¶ 5, and future promotion decisions can be challenged via intramilitary channels.  In fact, the decision at issue here is still reviewable by the BCMR.  See Army Reg. 15-185, ¶ 2-4 (setting a 3-year time limit).

As to the third and fourth Mindes factors, the considerations here differ little from those in Gonzalez.  Review of these claims would require the Army to gather evidence of Specialist Hall's performance, both at Fort Riley and in Iraq, and would call for inquiry into the motives of several members of his chain of command.  Such an inquiry would plainly intrude on a sensitive area of military expertise and discretion, and thus, the Mindes factors counsel strongly against review. Accord Mier v. Owens, 57 F.3d 747, 751 (9th Cir. 1995) ("Military promotion is one of the most obvious examples of a personnel action that is integrally related to the military's structure."); Dibble v. Fenimore, 339 F.3d 120, 128 (2d Cir. 2003) (retaliatory discharge claim nonjusticiable because review would require "inquiry into the mindset of [the plaintiff's] superior officers, determining whether their various disciplinary actions were motivated by proper military concerns or by the unconstitutional desire to stifle . . . protected First Amendment activity").[9]

---

[9] This conclusion is consistent with the law in a number of other Circuits, which have found suits for injunctive relief based on discrete military personnel decisions to be nonjusticiable, even where discrimination is alleged.  See, e.g., Speigner v. Alexander, 248 F.3d 1292, 1296-98 (11th Cir. 2001) (declining review of racial discrimination claim under the bright-line rule that "cases brought

2. **Review of Plaintiffs' claims regarding Major Welborn's alleged misconduct would unjustifiably interfere with the Army's war-time operations and detract from mission readiness**

Finally, Plaintiffs' claims regarding the alleged disruption of the atheist meeting in Iraq present an even weaker case for review. As explained earlier, Plaintiffs plainly lack standing to sue for prospective injunctive relief against Major Welborn, as they have failed to establish any likelihood of future injury. At the same time, judicial inquiry into the facts underlying these allegations would be an invasive and time-consuming exercise, possibly involving discovery into events that took place in a war zone nearly a year ago, and perhaps "requir[ing] members of the Armed Services to testify in court as to each other's decisions and actions." Ricks, 295 F.3d at 1129 (citation omitted). Moreover, potential witnesses, whom Plaintiffs have never identified, and who may still be on tour in Iraq or in other critical areas, would inevitably be distracted from their primary duties. The policies underlying the judiciary's usual deference to military decisionmaking are all the more important during this time of actual combat, as judicial review would unjustifiably disrupt military operations, divert crucial resources, and, ultimately, "stultify the military in the performance of its vital mission."

---

by enlisted personnel against the military for injuries incident to service are nonjusticiable, whether the claims request monetary damages or injunctive relief"), cert. denied, 534 U.S. 1056 (2001); Watson v. Arkansas Nat'l Guard, 886 F.2d 1004, 1008-09 (8th Cir. 1989) (review of race-based discrimination claim would "require a highly intrusive judicial inquiry into personnel decisions tha ), cert.denied, 534 U.S. 1056 (2001) t bear upon the readiness of the military to perform its mission" that is "plainly . . . inconsistent with Congress' authority in this field"); Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 52 (2d Cir. 1999) (to permit suits for injunctive relief against superior officers based on discretionary personnel decisions would "unacceptably compromise military discipline and readiness for combat"); Knutson v. Wisconsin Air Nat'l Guard, 995 F.2d 765, 771 (7th Cir. 1993) (courts have deferred to the "superior experience of the military in matters of duty orders, promotions, demotions, and retentions" because judicial review would "undermine military discipline and decisionmaking or impair training programs and operational readiness"); Crawford v. Texas Army Nat'l Guard, 794 F.2d 1034, 1036-37 (5th Cir. 1986) (unlike "challenges to the facial validity of military regulations," suits for injunctive relief based on "discrete personnel matters . . . must be carefully regulated in order to prevent intrusion of the courts into the military structure").

Mindes, 453 F.2d at 199-201.

The Court should therefore find Plaintiffs' claims nonjusticiable under the Mindes doctrine. It need not reach this issue, however, because Plaintiffs' claims are also barred under Mindes by Specialist Hall's failure to exhaust his intramilitary remedies, and because, as a threshold matter, Plaintiffs lack standing to obtain the prospective injunctive relief they seek.

## CONCLUSION

Specialist Hall ignored his best avenue for relief: asking the Army to redress his grievances before asking this Court to intervene. See, e.g., Simmat, 413 F.3d at 1237 (agency review "typically moves much more quickly than federal litigation" and can provide the "swiftest and most effective remedies"). He now seeks review of claims that directly implicate the Army's authority to regulate the discipline and composition of its forces. Such decisions are committed to military judgment, subject to the oversight of Congress and the Executive Branch, not the courts.

For the foregoing reasons, the Court should grant Defendants' motion and dismiss this action in its entirety.


Dated: July 8, 2008                          Respectfully submitted,

                                             GREGORY G. KATSAS
                                             Assistant Attorney General

                                             ERIC MELGREN
                                             United States Attorney

                                             VINCENT M. GARVEY
                                             Deputy Director, Federal Programs Branch

                                             /s/ Eric B. Beckenhauer
                                             ERIC B. BECKENHAUER
                                             Cal. Bar No. 237526
                                             Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. N.W.
Washington, D.C.  20530
Telephone: (202) 514-3338
Facsimile: (202) 616-8470
E-mail: eric.beckenhauer@usdoj.gov

*Counsel for the United States of America*

ELECTRONICALLY FILED

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2008, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Elizabeth R. Herbert, erh@irigonegaray.com,
Pedro L. Irigonegaray, pli@plilaw.com, and
Robert V. Eye, bob@plilaw.com,
*Counsel for the Plaintiffs*.

/s/ *Eric B. Beckenhauer*
ERIC B. BECKENHAUER
Cal. Bar No. 237526
Trial Attorney
U.S. Department of Justice